**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07-137-cr-01-SEB-KPF |
| | ) | |
| LUDWIG V. BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO SUPPRESS**
**(Doc. No. 42)**

The matter currently before the court is the Defendant's motion to suppress evidence of cocaine base (crack cocaine) seized from a vehicle allegedly in violation of the Fourth Amendment after the Defendant was arrested.  The Government opposes the motion.

On June 24, 2009, a grand jury issued a three-count superseding indictment alleging that the Defendant, Ludwig V. Brown: (1) did, on or about September 18, 2007,  knowingly distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii); (2) did, on or about September 25, 2007, knowingly distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii); and (3) did, on or about October 8, 2007, knowingly possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine), a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii).

1

Having reviewed the parties' briefs, the controlling legal authorities, the evidence and oral arguments presented at a hearing on the motion that took place on July 13, 2009, the court denied the motion to suppress in an oral ruling from the bench, in accordance with which the following findings of fact and conclusions of law are now entered.

## I.  FACTUAL BACKGROUND

In September of 2007, Indianapolis Metropolitan Police Department (IMPD) Detectives Garth Schwomeyer and Jeremy Ingram received information that Ludwig Brown, the Defendant, was selling large quantities of cocaine base in and around Indianapolis, Indiana.  The officers' background check of the Defendant revealed that he had been previously convicted of Dealing in Cocaine in Marion County, Indiana, in 2005; that he was a defendant in three separate criminal cases pending in Marion County, Indiana; that he was currently subject to a home detention order as a condition of release from one of these pending cases; that his driving privileges were suspended in the State of Indiana; and that there was an active warrant for the Defendant's arrest issued from Escambia County, Florida.  The officers began investigating the Defendant's alleged narcotics activities, including arranging controlled purchases of narcotics through the use of a confidential reliable informant (CI) who had informed the officers that he/she had purchased large quantities of cocaine from the Defendant.  After two allegedly successful controlled purchases by CIs from the Defendant, the officers set up a third iteration through a controlled telephone call.  The meeting was set to take place at the same location as the two previous controlled purchases – the 500 Liquor Store at 1008 West 16th Street in Indianapolis, Indiana – on October 8, 2007.

Law enforcement officers had determined  to arrest the Defendant before he met with the CI on this occasion.  On October 8, 2007, the Defendant arrived at the 500 Liquor Store driving a

black Ford Crown Victoria, the same car he had used during the first of the two prior controlled buys, that was registered to another individual. Law enforcement agents pulled their cars in behind the Crown Victoria, blocking it from escaping them, and immediately identified themselves to Brown. The Defendant responded by quickly jumping out of the driver's side of the vehicle, leaving its door open, and attempting to flee.[1] As he fled, officers witnessed the Defendant throwing two cellular phones and a clear plastic baggie containing an off-white rock-like substance on the ground. This baggie was retrieved by the officers and later found to contain cocaine base. Officers apprehended and arrested the Defendant, securing him with handcuffs more than twenty feet from the Crown Victoria. Subsequent to the Defendant's arrest, Officer Schwomeyer approached the open driver's side door of the Crown Victoria. Looking inside the vehicle, he saw in plain view four clear plastic baggies containing an off-white rock-like substance lying openly on the driver's side floor of the vehicle. He seized these baggies, which were later found to also contain cocaine base. The Defendant has moved to suppress the baggies that Officer Schwomeyer recovered from the vehicle.

## II. DISCUSSION

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. When the government makes a warrantless search or seizure, it bears the burden of demonstrating that the search or seizure conforms to one of the narrowly defined exceptions to the

---

[1] In making this finding, the Court explicitly credits the testimony of Detective Schwomeyer at the hearing on the motion to suppress. The Court finds Detective Schwomeyer's version of the events leading up to the Defendant's arrest was inherently credible, while Brown's testimony on this and other points, to the extent it conflicted with Det. Schwomeyer's, was simply not believable.

warrant requirement. *United States v. DiModica, 468* F.3d 495, 499 (7th Cir. 2006). Notably, a warrantless search of a vehicle is valid if it is based on probable cause. *Ornelas v. United States,* 517 U.S. 690, 693 (1996); *see also Arizona v. Gant*, 129 S. Ct. 1710, 1721 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross* authorizes a search of any area of the vehicle in which the evidence might be found.") (internal citation omitted).

### A. Standing

As a preliminary matter, the protections afforded by the Fourth Amendment are personal rights that can be properly invoked only by the individual whose rights are allegedly violated by government action. *See United States v. Swift*, 220 F.3d 502, 510 (7th Cir. 2000). In order for the Defendant to establish that his Fourth Amendment rights were violated by an unreasonable search – and therefore to demonstrate the standing necessary to challenge the admission of evidence obtained in the search – he must first establish that he had a legitimate expectation of privacy in the place searched. *See United States v. Torres*, 33 F.3d 225, 229 (7th Cir. 1994). Because the Defendant did not own the Crown Victoria he was driving and the vehicle was not otherwise registered to him, in order to challenge the admission of evidence discovered therein he must satisfy "a two-pronged test, asking whether [he] had a subjective and an objective right to privacy." *United States v. Figueroa-Espana*, 511 F.3d 696, 704 (7th Cir. 2007). "To satisfy the subjective portion of the test, a defendant must show that he 'actually and subjectively' held an expectation of privacy. An objective expectation is one that society recognizes as legitimate and reasonable." *Id.* (quoting *Torres*, 32 F.3d at 230).

The government contends that the Defendant lacked a reasonable expectation of privacy in

the Crown Victoria and that, therefore, any search conducted therein could not have violated the Defendant's Fourth Amendment rights.  The Defendant's claim to a reasonable expectation of privacy is dubious at best.  The Defendant testified that the Crown Victoria was registered to Cierra Tinker, a lady friend of his from whom he claims to have purchased the car.   That assertion notwithstanding, the Defendant never established either how he came to be in possession of the car on the day of his arrest, or that he had the permission of the owner of the car to drive it.  Assuming he possessed the subjective expectation of privacy – a point that he has not satisfactorily demonstrated and that his rapid abandonment of the vehicle during his flee attempt belies – the Defendant may be unable to establish an objective expectation of privacy as a matter of law.  But because his driver's license apparently was suspended at the time of this incident and he "should not have been driving any vehicle . . .  his objective expectation of privacy in the truck was neither legitimate nor reasonable."  *Id.*  We do not believe Defendant has established that he has standing to challenge the admissibility of the evidence found within the car, based on the afore-referenced principles.   Nonetheless, we shall assume for purposes of conducting a complete analysis of Defendant's legal contentions that he did have standing and continue our analysis of his remaining claims.

### B.  Probable Cause

Defendant does not challenge the lawfulness of the officers' seizure of the baggie containing cocaine base that he threw onto the ground when departing the Crown Victoria in an attempt to flee. (Mot. Suppress p. 2 n.1.)  Instead he moves to suppress evidence obtained found to be inside the Crown Victoria.  His only challenge is to the lawfulness of Detective Schwomeyer's seizure of additional baggies containing cocaine base from the Crown Victoria, alleging that the "search . . .

was made . . . without legal authority." (Mot. Suppress ¶ 3.)  The court disagrees with Defendant's legal conclusion.

The officers who were conducting the investigation of the Defendant had previously made controlled purchases of large amounts of cocaine base from him through the use of a confidential informant.  These two purchases involved quantities of cocaine base – 110.63 grams and 125.38 grams – that exceeded the amount of cocaine base in the baggie that the Defendant discarded in the parking lot while attempting to flee.  The officers met the Defendant at the 500 Liquor Store after setting up a third controlled buy of a quantity of cocaine similar to the two prior transactions.  When the officers confronted Defendant at the scene, they clearly intended to arrest him for narcotics-related crimes based in part upon the previous controlled buys as well as the current one. Accordingly, the court finds that Detective Schwomeyer had probable cause to believe that evidence of the Defendant's narcotics trafficking activities would be found within the Crown Victoria when he spotted the discarded baggie on the ground along or in close proximity to the trail Defendant had blazed in attempting to stage his expeditious departure from the scene; in fact, probably cause likely was established as soon as the Defendant arrived at the location to conduct his third drug transaction with the CI.

This finding of probable cause renders the detective's actions – even if characterized as a "search" – entirely reasonable despite the lack of a warrant.  Detective Schwomeyer did not violate the Fourth Amendment by seizing the baggies that he reasonably suspected contained cocaine base from inside the Crown Victoria and in plain view.  Because the Defendant's rights were not violated in this putative search, his motion to suppress the evidence lacks legal merit.

### C.  Search Incident to Arrest

The Defendant's motion to suppress is premised upon his contention that Detective Schwomeyer's search of the Crown Victoria was not a valid search incident to lawful arrest. (*See* Def. Memo in Support p. 3.)  The government does not dispute the Defendant's assertion that the police officers apprehended and placed handcuffs on him far enough from the Crown Victoria that they could not have reasonably believed that he could reach a weapon or attempt to destroy evidence located within the vehicle.  The Defendant therefore argues – in light of the United States Supreme Court's recent decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009) – that the circumstances of his arrest render any subsequent warrantless search of the Crown Victoria pursuant to his arrest inherently unreasonable.

While the facts underlying *Gant* share some similarity with those in the instant case, they are sufficiently dissimilar to compel suppression of the physical evidence found inside the car in our case.  A review of the facts in *Gant* discloses that Gant had been arrested during the course of a narcotics investigation on an outstanding warrant for driving with a suspended license.  After Gant was arrested and secured in the back of an officer's patrol car, officers searched the vehicle that Gant had been driving.  Gant moved to suppress the firearm and the bag of cocaine the officers found in the car  "on the ground that the warrantless search violated the Fourth Amendment."  *Id.* at 1715. In assessing the reasonableness of the warrantless search, the Court held that "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Id.* at 1716 (referring to the possibilities of an arrestee reaching a weapon or destructible evidence). In an attempt to resolve a circuit split and add clarity to the search incident to arrest exception to the

warrant requirement, *see id.* at 1718 nn.2-3, the Supreme Court ruled that police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719. The Court further held, however, that "circumstances unique to the vehicle context [also] justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Ultimately, the Court also determined that the challenged evidence in *Gant* did not meet the latter exception because "[a]n evidentiary basis for the search was also lacking. . . ." *Id.*

The court agrees that, under *Gant*, Detective Schwomeyer would likely not have been justified in searching the Crown Victoria in order to prevent the Defendant from reaching a weapon or destroying evidence. However, we disagree with Defendant's conclusion that *Gant*'s holding would render such a search *per se* unreasonable. The case before the Court is readily distinguishable from *Gant*. The Defendant's conclusion relies on an unjustifiably narrow presentation of the circumstances of the Defendant's arrest. While it is true that, as in *Gant*, the Defendant had an outstanding warrant for his arrest on an unrelated matter, here the Defendant was the target of a well-matured and on-going narcotics investigation. The reliable information that the officers had amassed gave them probable cause to arrest the Defendant upon his arrival at the 500 Liquor Store, and the contraband the Defendant discarded while attempting to flee the officers subjected him to an immediate warrantless arrest. The officers in the present case arrested the Defendant for crimes involving narcotics, not solely upon the basis of the outstanding Florida warrant as defense counsel contends. Because the officers reasonably believed both that additional narcotics would be found

in the Crown Victoria – due to the quantities involved in two previous controlled buys and the arrangements that had been made by the Defendant with the CI relating to the virtually identical but ultimately aborted third buy– and also that these narcotics would be further evidence of the Defendant's offense of arrest, a search of the Crown Victoria incident to the Defendant's arrest comports with the Fourth Amendment. *See Gant*, 129 S. Ct. at 1723 ("Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest."). Contrary to the Defendant's contention, *Gant* supports the admission rather than the suppression of the contested evidence in this case.

### D.  Plain View Doctrine

Although both the probable cause determination and the search incident to arrest exception provide sufficient grounds for admission of the contested evidence, another exception to the warrant requirement independently eliminates any grounds for suppression in this case.  As previously stated, the Court has credited the testimony of Detective Schwomeyer who indicated that when Brown fled from the Crown Victoria, he left the driver's door open.  Detective Schwomeyer testified that as he approached the vehicle after the Defendant's arrest he noticed four baggies in plain view on the driver's side floorboard (see Hearing Exhibit 4) and that he reasonably believed that these baggies contained cocaine base.  The court, having concluded that Detective Schwomeyer's testimony was credible and reliable,  and there being no other reason to doubt that the baggies were plainly visible in the vehicle through the open door, we conclude that they were, in fact, in plain view.

The plain view exception to the warrant requirement renders the seizure of the baggies

reasonable despite the lack of a warrant.  Detective Schwomeyer had the lawful right to seize the baggies based upon their incriminating nature that was immediately apparent to him as an officer of nearly twenty years of law enforcement experience and having undergone the necessary training.  *See United States v. Willis*, 37 F.3d 313, 316 (7th Cir. 1994).  It would also be of no avail to claim that Detective Schwomeyer had no right to approach and look in the Crown Victoria.  The "car was already parked in the . . . parking lot, subject to observation by anyone who cared to look.  Furthermore, when [the Defendant fled] out of the car before [officers] confronted him, he left the driver's side door open."  *Id.* at 316.  *See also United States v. Thornton*, 463 F.3d 693, 698-99 (7th Cir. 2003) ("An officer needs no reason to look through the windows of a car parked in a public place.").  Accordingly, the plain view doctrine provides an independent basis to deny the Defendant's motion to suppress the contested evidence.

### E.  Inevitable Discovery

The government also argued in its response in opposition to the Defendant's Motion to Suppress Evidence that the baggies contained in the Crown Victoria would have ultimately been discovered through a lawful inventory search of the vehicle pursuant to IMPD policy.  The government contended that suppression would have been inappropriate even if this court had found that an unreasonable warrantless search of the vehicle had occurred subsequent to the Defendant's arrest.  Having concluded that the seizure of the contested evidence was reasonable and permissible as based upon probable cause and the plain view doctrine, as well as the search incident to arrest exception to the warrant requirement, the Court shall withhold a ruling on the government's inevitable discovery contention at this time.

## III.  CONCLUSION

For the foregoing reasons, the Defendant's Motion to Suppress Evidence  is **DENIED.**


Date:   07/30/2009


_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Jack  Crawford
CRAWFORD & DEVANE
crawdevlaw@indy.rr.com

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov

11